144     APPELLATE COURTS OF ILLINOIS.

Swanson v. Moline, Rock Island & East. Trac. Co., 204 Ill. App. 144.

## Emil Swanson, Administrator, Appellee, v. Moline, Rock Island & Eastern Traction Company et al., Appellants.

### Gen. No. 6,370.

1. CONFLICT OF LAWS, § 38*—*where actions ex delicto may be brought.* Actions *ex delicto* for injuries to the person are transitory and may be brought within a jurisdiction other than that within which such injuries occurred.

2. PLEADING, § 100*—*what plea of general issue does not admit.* A plea of the general issue to a declaration charging that the defendant's railroad trestle on which plaintiff was walking when he was injured was a public highway does not admit such charge.

3. ROADS AND BRIDGES, § 1*—*what does not constitute a public highway.* A railroad trestle over a stream is not made a public highway by reason of the stream being, as a navigable stream, a public highway.

4. DEDICATION, § 25*—*what does not constitute dedication of railroad trestle as public highway.* Where the predecessor of the defendant railroad filed a certain plat of an island showing two straight lines close together drawn across the river channel from the island to the shore apparently where the railroad's trestle was built, *held* that such plat was not a dedication of the trestle as a public highway, in an action to recover damages for injuries sustained by the plaintiff while walking on such trestle.

5. INTERURBAN RAILROADS, § 4*—*when instruction as to plaintiff being a trespasser is erroneous.* An instruction submitting to the jury whether a certain interurban railroad trestle where the plaintiff was injured was a public highway and that, if it was, such party was not a trespasser thereon, *held* erroneous, in an action to recover damages for such injury.

6. ROADS AND BRIDGES, § 18*—*what user of railroad trestle does not constitute it a public highway.* The fact that an interurban railroad acquiesced in the occasional use by the public of its trestle over a stream for foot travel would not make such trestle a public highway or require the railroad to place officers at the ends of the trestle to prevent such use, nor would the fact such trestle was used in going to an amusement park owned by the railroad make such trestle a public highway.

Appeal from the City Court of Moline; the Hon. G. O. DIETZ, Judge, presiding. Heard in this court at the October term, 1916. Reversed and remanded. Opinion filed February 10, 1917.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

SEARLE & MARSHALL, for appellants.

A. H. KOHLER and J. T. & S. R. KENWORTHY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Oscar E. Swanson and Evan S. Evans were walking over a trestle owned by one of appellants and operated by the other for an interurban railway over an arm of the Mississippi River from the Illinois shore to Campbell's Island, where there was an amusement park and an inn and where a dance was in progress, after nine o'clock p. m. of May 31, 1915, when an interurban car overtook them. Evans succeeded in clinging to a timber on the lower side. Swanson apparently fell down and was struck by the fender and either was knocked off or jumped off or fell off and was drowned. The administrator of his estate brought this action in the City Court of Moline to recover damages for the loss of his next of kin by his death, which was attributed in the declaration to the negligence of the appellants. After certain pleas to the jurisdiction, appellants filed a plea of not guilty and there was a jury trial and appellee had a verdict and judgment for $3,000, from which defendants below appeal.

This accident did not occur in Moline, and it is contended that therefore the City Court of Moline had no jurisdiction. Actions *ex delicto* for injuries to the person are transitory. 1 Chitty's Pl. 269; *Hanna v. Grand Trunk Ry. Co.*, 41 Ill. App. 116. We decided this question in favor of the jurisdiction in *Knickerbocker Ice Co. v. Leyda,* 128 Ill. App. 66. This was followed in *Torpedo Top Co. v. Royal Ins. Co.*, 162 Ill. App. 338. Both cases are based upon *Hercules Iron Works v. Elgin, J. & E. Ry. Co.*, 141 Ill. 491. This is a civil case within the meaning of *Brueggemann v.*

146    APPELLATE COURTS OF ILLINOIS.

Swanson v. Moline, Rock Island & East. Trac. Co., 204 Ill. App. 144.

*Young,* 208 Ill. 181. We hold the City Court had jurisdiction.

Appellee claims that this trestle was a public highway and that Swanson was not a trespasser in walking thereon, because (1) the state of the pleading admits that it was a public highway; (2) it was over a navigable river, which is all a public highway; (3) a plat filed by a predecessor of appellants dedicated this trestle as a public highway; (4) the top of the dam on which this trestle was built is a public highway, and this trestle is therefore in a public highway, and it is therefore itself a public highway; and (5) appellants invited the public to travel on a trestle and consented that they do so.

Certain counts of the declaration charged that this was a public highway. Appellee contends that by filing the general issue only, appellants have admitted that allegation and cannot be heard to dispute it. The authorities relied upon by appellee to sustain that contention hold that by filing only the general issue the defense admits that it owned and operated the appliances which caused the injury. In *Union Stock Yards & Transit Co. v. Karlik,* 170 Ill. 403, each count of the declaration alleged that the accident occurred on a certain street in the City of Chicago. The only plea was not guilty. This was not treated as confessing that this was a public street, but on the contrary, the question whether it was a public street was treated as one of the principal questions to be decided from the evidence. We hold that the plea in this case did not admit that this trestle was a public highway.

For the proposition that a navigable stream is a public highway, appellee relies upon *Braxon v. Bressler,* 64 Ill. 488, and *Village of Brooklyn v. Smith,* 104 Ill. 429. Those cases related to the title to a street at the water's edge, and only incidentally say that a stream is a public highway. It no doubt is a public

highway along which foot travelers can walk at will plication here contended for would make every railroad trestle bridge over a navigable stream a public highway along which foot travelers can walk at will without being trespassers, and we conceive that application of the rule to be entirely untenable.

A predecessor of appellants in the ownership of this interurban road filed a certain plat of Campbell Island, which showed various lots and streets on parts of said island and the amusement park on the west side of said island, and had two straight lines close together drawn across the river channel to the Illinois shore at the place, probably, where the trestle is built. Appellee offered that plat in evidence, and contends that that was a dedication of this trestle as a public highway and relies upon *City of Elgin v. Beckwith*, 119 Ill. 368. That was an action of ejectment. The lines across the Fox River on the plat there in evidence were marked "bridge." At the time this plat was made there was already a bridge across the Fox River at that point. The question was who had the title to certain land at the margin of the river and whether a certain street went straight across the river or changed its direction at the river bank. In the plat here in question the lines referred to are not marked "bridge" and are close together, and evidently only indicate the line of this trestle. We hold the plat did not dedicate this trestle as a public highway.

Formerly there was a ferry across this arm of the river about a quarter of a mile above where the trestle now is. Whether that ferry is still continued does not appear. Boats are now kept some distance below where this trestle is. Many years ago the United States Government built a dam across this branch of the river at this place in order to cause more water to pass west of the island where there was actual navigation. The dam was apparently thirty or thirty-five

148    APPELLATE COURTS OF ILLINOIS.

Swanson v. Moline, Rock Island & East. Trac. Co., 204 Ill. App. 144.

feet wide and was made comparatively smooth on top. Much of the time no water went over this dam, and the officer who had charge of building it seems to have made the top of the dam comparatively smooth, so that people could walk and drive across it, between the Illinois shore and Campbell's Island in times of low water. Afterwards the predecessor of appellants obtained a permit to build this trestle upon said dam on condition that it would keep the dam in repair and that the Secretary of War could revoke the permit at will. It built this trestle on the east side of the dam, leaving sufficient of the top of the dam on the west side of it for the passage of teams and people. For many years teams have been driven and people have walked between the island and the mainland on the top of this dam immediately west of this trestle at times of low water. We see no reason to suppose that this permissive use of the top of the dam has turned it into a public highway as against the United States Government, but are of opinion that the Government could remove the dam or so change it as to make it impassable for teams and foot travelers whenever it chooses; but if the public by long use has acquired the right to go over the top of the dam, we fail to see how this makes the top of the trestle a public highway. The top of the trestle is seven and a half or eight feet above the top of the dam. Will it be contended that the top of the elevated roads in the streets of the City of Chicago are public highways over the ties of which foot passengers may lawfully walk at will, or that the tops of elevated railroads in cities are public highways which foot passengers may use at will, simply because they are in and over streets which are public highways? The obvious purpose of such elevations is so that the railways shall cross above the space where people have a right to travel and that the public shall be free from the danger of being struck by cars traveling on rail-

ways located on the surface of the ground. This question was decided in *Mason v. Missouri Pac. Ry. Co.,* 27 Kan. 83. The plainttiff there was injured upon such a trestle erected over a public highway. It was there contended by the plaintiff that, as the street belonged to. the public from the center of the earth to the heavens above, persons had a right to use the trestle as a public street. The court said:

"Not so. The embankment and trestlework were the property of the railway company. They were used for the purpose of the company in operating its cars and trains, and so built and constructed as to render any travel thereon perilous, even without the operation of cars upon the track. Whether the authorities consented to the construction of such embankment and trestlework is immaterial at this time. The railway company was in full occupation of it, and the public had no right to cross over such a dangerous structure, and, knowing it to be unsafe for travel, to claim exemption from all negligence on their part, and charge the railway company with the fruits of their own imprudence."

We find nothing in the evidence which would permit the jury to find that the top of the trestle was a public highway. The court therefore erred in giving instructions for appellee which submitted to the jury the question whether this trestle was a public highway and which told the jury that if it was the deceased was not a trespasser.

Appellee contends that appellants invited the public to travel on this trestle and consented that they do so. In the construction of this trestle there were timbers resting on the ground and standing parallel with the course of the water. Upon these timbers other heavy timbers at each side ran lengthwise of the trestle. On top of these timbers were railroad ties parallel with the water and from six to ten inches apart. On these

ties the rails of the track were laid. Any one walking lengthwise of this trestle must exercise care not to stumble and fall between the ties. There was no place fitted for foot passengers to walk upon. The entire structure was but little wider than the cars which traveled upon it. There was not room on either side for a person to stand while a car passed him. On the up stream side, a little distance from the trestle were poles seventy-five feet apart, which carried the arms with which the trolley was connected. There were planks on edge between the trestle and each pole, so that it was possible for a person to get out by the pole and let a car pass him. The very structure of this trestle is practically conclusive proof that it was not intended for public travel on foot. On the Illinois side, close to the track, was a sign a short distance above the ground, which read: ''Bridge—Danger—Keep off,'' in capital letters a foot high. There is proof that people did walk over this trestle in high water, and that once before this event a car overtook some people on the trestle and stopped and took them on the car. There is no proof that at any other time appellants or their servants saw people going across this trestle. The island contained about five hundred acres and had on it two farms occupied the year round by its owners, and numerous cottages occupied only in the summer time. This railway track across the island and to the park on the other side of the island was only operated in the summer time. Appellant's would not be chargeable with notice that the public traveled on the trestle when appellants were not using it. In the summer time appellants only operated a car across it once each way every thirty minutes, except that on holidays there was a car each way once every fifteen minutes. Therefore people may have gone over this trestle at numerous times without appellants being charged with notice thereof. Moreover, this young

man was walking across it after nine o'clock of a night when the moon was not shining, and we do not find any proof that any one ever traveled across it in the night before. But if appellants knew that people sometimes did walk across the trestle, that did not give consent nor require appellants to place officers at the ends of the trestle to prevent this use. This question has been many times considered by the Supreme Court, from *Illinois Cent. R. Co. v. Godfrey,* 71 Ill. 500, in 1874, down to a recent date, and the cases on this subject are so fully collected and discussed in *Cunningham v. Toledo, St. L. & W. R. Co.,* 260 Ill. 589, that we deem it unnecessary to review them here. The court there said:

"It very materially affects the question of the respective duties and liabilities of the parties whether at such time the plaintiff was in the exercise of a legal right or not. The right of way was the exclusive property of the company, upon which no unauthorized person had a right to be for any purpose. The plaintiff was traveling upon defendant's right of way, not for any purpose of business connected with the railroad but for his own mere convenience, as a footway, in reaching his home on return from a search after his cow. There was nothing to exempt him from the character of a wrongdoer and trespasser in so doing, further than the supposed implied assent of the company arising from their noninterference with a previous like practice by individuals. But because the company did not see fit to enforce its rights and keep people off its premises no right of way over its grounds was thereby acquired. It was not bound to protect or provide safeguards for persons so using its grounds for their own convenience. The place was one of danger, and such persons went there at their own risk and enjoyed the supposed implied license subject to its attendant perils. At the most there was here no more

than a mere passive acquiescence in this use. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident.''

The fact that this decision was by a divided court only emphasizes that the court intended to adhere to the rule there stated. We discussed a similar question in *Deach v. Woolner Distilling Co.*, 187 Ill. App. 524. Appellee argues that these cases are inapplicable because deceased was going to a dance at the amusement park conducted by appellants and therefore was on the trestle on business connected with these companies. This trestle was built and operated and the amusement park conducted in order that people might ride in appellants' cars and pay the proper fare therefor, but there was never any implied permission to walk over this trestle in order to escape paying fare. We hold this position untenable. Appellee lays much stress on *Chicago Terminal Transfer R. Co. v. Gruss*, 200 Ill. 195. *Chicago Terminal Transfer R. Co. v. Kotoski*, 199 Ill. 383, was another case growing out of the same accident. The plaintiffs who there recovered were walking on a trestle, but they had been told by trainmen to walk there, and the employee on the front car of the bunch of cars running backward which struck these people saw them and did not signal his engineer to stop, and the declaration charged wilful and wanton negligence, and the court held that this was proof tending to show wilful and wanton negligence. There is no such charge in the present declaration, and we consider those cases not in point.

We are of opinion that, so far as the evidence in this record shows, Swanson and all others who went over this trestle on foot were trespassers and appellants only owed them the duty not to wilfully injure them after their presence on the trestle was discovered,

which means that the motorman of the car was bound to stop his car as soon after he discovered the presence of this man ahead of him on the trestle as he could by the use of the appliances which he had and without danger to the safety of his car and passengers. Appellee introduced testimony tending to show that the motorman did not use certain appliances within his control, by the use of which he could have stopped the car sooner than he did. Appellants introduced testimony tending to show that the car could sooner be stopped by the appliances which the motorman did use than by those which he did not use. As we conclude that this case should be submitted to another jury, uninfluenced by instructions which left the jury to find that this trestle was a public highway and Swanson not a trespasser in traveling thereon, we do not now discuss the comparative weight of the testimony on this question on each side.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*